NIELSEN, MERKSAMER, PARRINELLO,
  MUELLER & NAYLOR, LLP
JAMES R. PARRINELLO, ESQ. (S.B. NO. 63415)
CHRISTOPHER E. SKINNELL, ESQ. (S.B. NO. 227093)
2350 Kerner Boulevard, Suite 250
San Rafael, California 94901
Telephone:  (415) 389-6800
Facsimile:    (415) 388-6874
Email: jparrinello@nmgovlaw.com
Email: cskinnell@nmgovlaw.com

*Attorneys for Plaintiffs*
RON DUDUM, MATTHEW SHERIDAN, ELIZABETH MURPHY, KATHERINE WEBSTER, MARINA FRANCO & DENNIS FLYNN

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RON DUDUM, MATTHEW SHERIDAN, ELIZABETH MURPHY, KATHERINE WEBSTER, MARINA FRANCO & DENNIS FLYNN,<br><br>　　　　　*Plaintiffs*,<br><br>vs.<br><br>JOHN ARNTZ, Director of Elections of the City and County of San Francisco; the CITY & COUNTY OF SAN FRANCISCO, a municipal corporation; the SAN FRANCISCO DEPARTMENT OF ELECTIONS; the SAN FRANCISCO ELECTIONS COMMISSION; and DOES 1-20,<br><br>　　　　　*Defendants.* | Case No.  10-CV-00504-SI<br><br>**PLAINTIFFS' OPPOSITION TO BRIEF OF NEW AMERICA FOUNDATION AS *AMICUS CURIAE***<br><br>JUDGE: Hon. Richard Seeborg<br>COURTROOM: 3 |

## I. **INTRODUCTION.**

NAF's amicus brief is peppered with citations to inadmissible hearsay and to proffered amicus declarations that this Court properly declined to accept into the record.[1] Those citations should be disregarded, along with the text of the brief they purport to support.[2]

The remaining portions of the NAF amicus brief are riddled with fundamental errors as discussed below.

## II. **THE AMICUS BRIEFING OF NAF CONTAINS MANY *HIGHLY* MISLEADING—AND IN SEVERAL CASES FLATLY WRONG—STATEMENTS OF LAW AND FACT.**

### A. **NAF Blatantly Mischaracterizes Cambridge's Electoral System.**

NAF's amicus brief claims that the Massachusetts Supreme Court opinion in *McSweeney v. City of Cambridge*, 665 N.E.2d 11 (Mass. 1996), is directly on point, and contrary to Plaintiffs' position, because "like San Francisco, Cambridge also limits the number of candidates that voters may rank in its multiple-seat form of IRV." (NAF's Proposed Amicus Brief, p. 10:10-11.) This is <u>flat out false</u>.

First, it is worth noting that this claim is based upon evidence that the Court declined to accept into the record.

But even leaving that aside, NAF's claim is flatly contradicted by the

---

[1] With respect to hearsay, *see* Amicus Brief, pp. 1 n.1 (citation to newspaper article), 2 nn.4 & 6-10 (citation to NPR website and newspaper article), 3 n.12 (citation to "studies" on NAF website), 4 nn.21-22 (same), 5 nn.24 (NAF press release) & 25 (news article), 6 n.28 (articles), 10 n.48 (FairVote website), 12 nn.59-60 (NAF "study"), 15 n.62 (same), 16 n.66 (FairVote website) and 21 n.87 (news article). Citations to the rejected declarations can be found in footnotes 13-14, 16-17, 19-20, 28, 31-32, 66, 72-77 and 83-84.

[2] *See Soles v. Board of Comm'rs*, 746 F. Supp. 106 (S.D. Ga. 1990) (granting motion to strike hearsay statements in defendant's brief); *United States v. Filson*, 347 Fed. Appx. 987, 991 (5th Cir. 2009) (discussing district court's grant of a motion to strike United States's reply brief in support of summary judgment based on its reliance on hearsay "evidence").

Massachusetts Supreme Court. That Court described the Cambridge system in detail in *Moore v. Elec. Comm'rs of Cambridge*, 35 N.E.2d 222 (Mass. 1941), and it expressly stated that each voter "*may mark as many choices as he pleases.*" *Id.* at 228 (emphasis added). *See also McSweeney,* 665 N.E.2d at 649 n.2 (citing *Moore* for its description of the Cambridge system). Further confirming this description, the Cambridge charter and a pamphlet from the Board of Election Commissioners, both available on the City of Cambridge's website,[3] *plainly* state that a voter may "[m]ark as many choices as [he or she] please[s]." CAMBRIDGE CHARTER § 112 ("Ballots; form and contents").

### B. Amicus's Suggestion That Three Supreme Court Justices Have Endorsed Restricted IRV Is Simply False.

NAF's implication that three Supreme Court justices have endorsed a system like San Francisco's is flat out false. (*See* Amicus Brief, p. 5.)

First of all, neither of the opinions cited by NAF discussed <u>restricted</u> IRV, and both were decided years before San Francisco became the first jurisdiction in the United States to adopt such a system.

Moreover, the case cited by NAF with respect to two of the three Justices (Justices Thomas and Scalia) in fact spoke *disapprovingly* of IRV.

In support of its claim, NAF cites to Justice Thomas's concurring opinion in *Holder v. Hall,* 512 U.S. 874 (1994) (which Justice Scalia joined, making him the

---

[3] *See* http://www.cambridgema.gov/election/Proportional_Representation.cfm (last visited Apr. 2, 2010). To the extent the Court has any question that the Cambridge system allows voters to rank all candidates, Plaintiffs request that the Court take judicial notice of these documents. Public records are properly subject to judicial notice under Federal Rule of Evidence 201(b)(2). *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006); *United States ex rel. Dingle v. BioPort Corp.*, 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003). *See also Paralyzed Veterans of Am. v. McPherson*, 2008 U.S. Dist. LEXIS 69542, *17 (N.D. Cal. Sept. 9, 2008) ("'It is not uncommon for courts to take judicial notice of factual information found on the world wide web.' *O'Toole v. Northrop Grumman Corp.,* 499 F.3d 1218, 1225 (10th Cir. 2007). This is particularly true of information on government agency websites, which have often been treated as proper subjects for judicial notice.").

second of the three Justices cited).  In that opinion Justice Thomas said there was no principled reason not to impose cumulative voting or transferable voting as a remedy for violation of the Voting Rights Act, rather than single-member districts. Critically, however, this statement was made in the context of Justice Thomas saying that he (and Justice Scalia) did not think that Section 2 of the VRA should be interpreted to allow any remedy for vote "dilution" (as opposed to denial) *at all*. He elaborated:

> . . . as the destructive effects of our current penchant for majority-minority districts become more apparent, [citation], courts will undoubtedly be called upon to reconsider adherence to geographic districting as a method for ensuring minority voting power. <u>Already, some advocates have criticized the current strategy of creating majority-minority districts and have urged the adoption of other voting mechanisms—for example, cumulative voting or a system using transferable votes</u>—that can produce proportional results without requiring division of the electorate into racially segregated districts. [Citations.]
>
> Such changes may seem radical departures from the electoral systems with which we are most familiar.  Indeed, they may be unwanted by the people in the several States who purposely have adopted districting systems in their electoral laws. But nothing in our present understanding of the Voting Rights Act places a principled limit on the authority of federal courts that would prevent them from instituting a system of cumulative voting as a remedy under § 2, or even from establishing a more elaborate mechanism for securing proportional representation based on transferable votes.

*Id.* at 908-10 (footnotes omitted).

To characterize this discussion as an *endorsement* of IRV—as amicus does—is to interpret it as saying *exactly the opposite* of what it does say.  Justice Thomas is saying that the single-member district remedy is bad, and in the future it could get even worse—the courts could impose IRV—so the Court should stop going down this path.

Notably, the Massachusetts Supreme Court in *McSweeney* rejected the City of Cambridge's effort to rely on Justice Thomas's discussion in its assessment of

the constitutionality of Cambridge's system of filling vacancies.  665 N.E.2d at 15.  Plaintiffs respectfully suggest that the same disregard is warranted in this case.[4]

### C. The Claim That USDOJ Implicitly Endorsed IRV's Constitutionality Is Likewise Baseless.

Equally misleading is amicus's suggestion that the U.S. Department of Justice has "implicitly" determined that restricted IRV is constitutional by entering an objection to the efforts of New York City Schools to implement an alternative to IRV.  That objection was made under Section 5 of the Voting Rights Act (42 U.S.C. § 1973c), which requires certain specified jurisdictions to obtain "preclearance" of changed voting practices from the Attorney General before implementing them.  (Amicus Brief, pp. 5-6.)

NAF's argument is highly disingenuous in the first place, because the New York schools use unrestricted IRV—not restricted IRV like San Francisco.  (Katz Decl., ¶ 14; N.Y. CLS Educ. § 2590-c(7).)

It is also disingenuous because under Section 5 an objection will be entered any time a newly-proposed electoral system will cause "retrogression" in the position of minority voters, *i.e.,* will make minority voters worse off than is the case under the existing system.  *Beer v. United States*, 425 U.S. 130, 141 (1975).  An objection does not constitute an endorsement of the existing system, but merely a determination that the new system would be even worse.  Critically, this comparative determination is made without regard to the constitutionality of the systems at issue.  *See Reno v. Bossier Parish Sch. Bd.*, 528 U.S. 320, 335 (2000)

---

[4] Justice Harlan, joined by no other justice, did make a passing favorable reference to ranked voting in a footnote to a concurring opinion that addressed the ability of the State of Ohio to exclude minor parties from the ballot.  *Williams v. Rhodes*, 393 U.S. 23, 47 n.8 (1968) (Harlan, J., concurring).  This reference was contained in a list of possible alternative voting systems that would be more narrowly-tailored to the State's interest than banning minor parties.  Moreover, even if that single, footnote—which even in a majority opinion would constitute the purest dicta—were relevant, Justice Harlan's statement cannot be read as an endorsement of <u>restricted</u> instant runoff voting.

(Attorney General must grant preclearance to non-retrogressive plan "no matter how unconstitutional it may be").

### D.   NAF Blatantly Mischaracterizes Plaintiffs' Contentions.

NAF argues its case by creating two strawmen to knock down—re-characterizing Plaintiffs' constitutional claims as something entirely different than what they are.

First, NAF claims that Plaintiffs are arguing for a constitutional right to a majority electoral system. (Amicus Brief, p. 11.) That is simply not the case. As Plaintiffs' counsel acknowledged at oral argument, a plurality system is constitutional. Plaintiffs have simply noted that the voters were told they would be given a majority system in enacting IRV, and that is not the case.

NAF then shifts gears and claims that Plaintiffs argue for a constitutional right to a runoff. Not so. Again, a plurality system would be perfectly constitutional. However, the voters themselves expressed a preference for a general and runoff as an alternative to IRV (if unrestricted IRV proves impossible to implement). S.F. CHARTER § 13.102 ("If ranked-choice, or 'instant runoff,' balloting is not used in November of 2002, and no candidate for any elective office of the City and County, except the Board of Education and the Governing Board of the Community College District, receives a majority of the votes cast at an election for such office, the two candidates receiving the most votes shall qualify to have their names placed on the ballot for a runoff election held on the second Tuesday in December of 2002.").

Plaintiffs do not deny that other alternatives may be constitutional. But restricted IRV is not.

///
///
///
///

### III. TREATING IRV ELECTIONS AS A SINGLE, UNITARY ELECTION, RATHER THAN A SERIES OF ELECTIONS, WOULD RAISE SERIOUS QUESTIONS REGARDING THE CONSTITUTIONALITY OF UNRESTRICTED INSTANT RUNOFF VOTING.

NAF appears to endorse the position of the City that restricted IRV is constitutional because it is a single, unitary election. *See* Amicus Brief, p. 12 ("By enabling voters to rank their choices in a single, decisive November election, IRV ensures that the winner receives broad support across all communities."). Not only is this characterization incorrect, but if accepted it would raise serious constitutional questions regarding unrestricted instant runoff voting.

The characterization of IRV as a series of elections has been critical to courts that have upheld unrestricted IRV against constitutional one-person, one-vote challenges. For example, in *Minn. Voters Alliance v. City of Minneapolis*, 766 N.W.2d 683 (Minn. 2009), the plaintiffs argued that IRV <u>is</u> a single, unitary election, and that IRV is therefore unconstitutional because it allows some voters to vote for multiple candidates while denying others the same opportunity.[5] The Minnesota Supreme Court rejected plaintiffs' contention, noting, "Appellants attempt to distinguish the primary/general election system on the basis that those elections are separate, independent events, but the effect in terms of the counting of votes is the same[,]" *id.* at 690-91, and "[u]nder IRV, only one vote per voter can be counted in each round, just as in serial primary/general elections a voter may vote only once per election." *Id.* at 692. The Court concluded, "Nor does the system of counting subsequent choices of voters for eliminated candidates unequally weight votes. Every voter has the same opportunity to rank candidates when she casts her ballot, and <u>in each round every voter's vote carries the same</u>

---

[5] Plaintiffs are aware that Minneapolis does limit the number of candidates that can be ranked, but the Minnesota Supreme Court case did not address that feature of the system, and in fact the court stated, "*A voter may rank as many or as few candidates as she chooses.*" 766 N.W.2d at 686 (emphasis added).

value." *Id.* at 693 (emphasis added).

The Michigan trial court in *Stephenson v. Ann Arbor Bd. of Canvassers*, No. 75-10166 AW (Mich. Cir. Ct. 1975) (*see* City's Request for Judicial Notice, Exhibit 6 (Dkt. #27-6)), took the same approach, rejecting a one-person, one-vote challenge based on the premise that each voter only had one vote counted at a time. *See id.* at 6 of 10 ("Such a voter does not have his vote counted twice—it counts only once and if that first preference no longer remains and is eliminated from consideration, his or her second preference is the 'counted' vote.").[6]

If this Court concludes that IRV is, in fact, a single, unitary election, it calls into question the reasoning of the foregoing cases, and the constitutionality of unrestricted IRV.

Nor would that conclusion save San Francisco's restricted IRV system from unconstitutionality. If San Francisco's system is viewed as a single, unitary system, then it is just as vulnerable to the one-person, one-vote issues rejected by the Minnesota and Michigan courts as unrestricted IRV is.

## IV. AMICUS'S RELIANCE ON *BURDICK V. TAKUSHI* IS MISPLACED.

Amicus relies heavily on *Burdick v. Takushi*, 504 U.S. 428 (1992), which upheld Hawaii's ban on write-in votes, urging that it supports the conclusion that restricted IRV imposes no severe burden on the right to vote. Nothing could be further from the truth.

The Court in *Burdick* concluded that Hawaii's bank on write-in voting was a minimal burden on the right to vote because it did not "unreasonably interfere with the right of voters to associate and have candidates of their choice placed on

---

[6] *See also* Marron, *Issue In Election Law—One Person, One Vote, Several Elections—Instant Runoff Voting and the Constitution*, 28 Vt. L. Rev. 343 (2004) ("*Under the instant runoff system the voters' ballots are counted as votes in a series of distinct runoff elections. . . .* Every voter has one and only one vote in each runoff round. A person whose first choice does not survive the first round has her subsequent choices counted as a new vote in following rounds." (emphasis added; footnote omitted)).

the ballot." *Id.* at 434.  Candidates' access to the primary ballot was easily obtained through a number of avenues—it was not unconstitutional for the State to put a minimal time restriction on those avenues.

More critically, however, the Court in *Burdick* did not consider denial of the right to cast a protest ballot to be equivalent to a denial of the right to cast a vote for a candidate who was actually on the ballot:

> [T]he objection to the specific ban on write-in voting amounts to nothing more than the insistence that the State record, count, and publish individual protests against the election system or the choices presented on the ballot through the efforts of those who actively participate in the system. There are other means available, however, to voice such generalized dissension from the electoral process; and we discern no adequate basis for our requiring the State to provide and to finance a place on the ballot for recording protests against its constitutionally valid election laws.

*Id.* at 441.

In San Francisco, by contrast, voters are not merely denied the right to "protest" against the candidates—they are denied the ability to vote for duly qualified candidates in the later, decisive runoff rounds.  "[T]he function of the election process is 'to winnow out and finally reject all but the chosen candidates,' [citation], not to provide a means of giving vent to 'short-range political goals, pique, or personal quarrel[s].'"  *Id.* at 438 (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)).  San Francisco's use of restricted instant runoff voting implicates the proper purpose—choosing candidates—in a way that, according to the *Burdick* court—write-in voting did not.

///
///
///
///
///
///

## V. **CONCLUSION**.

San Francisco's restricted IRV system is unconstitutional. Nothing in the NAF amicus brief establishes otherwise.

                                      Respectfully submitted,

Dated: April 7, 2010             NIELSEN, MERKSAMER, PARRINELLO,
                                            MUELLER & NAYLOR, LLP

                                      By:/s/James R. Parrinello
                                              James R. Parrinello

                                      By:/s/Christopher E. Skinnell
                                            Christopher E. Skinnell

                                      *Attorneys for Plaintiffs*